# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ANTON MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-1148 JCH |
| | ) | |
| TERRY RUSSELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, a prisoner, seeks leave to proceed in forma pauperis in this civil action under 42 U.S.C. § 1983. Having reviewed plaintiff's financial information, the Court assesses a partial initial filing fee of $2.00, which is twenty percent of his average monthly balance. *See* 28 U.S.C. § 1915(b). Additionally, this action is dismissed.

## Standard of Review

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief [is] a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

A complaint may be dismissed as malicious where it "was not [meant] to rectify any cognizable harm, but only to harass and disparage" the defendants. *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir.1999) (dismissing complaint against judges and federal prosecutor who obtained conviction against the plaintiff as frivolous and malicious). When determining that an action or allegation is malicious, the Court refers to objective factors such as the circumstances and history surrounding the filing, the tone of the allegations, and whether probative facts vital to the life of the lawsuit have been alleged.

**The Complaint**

Plaintiff was incarcerated at the Eastern Reception Diagnostic and Correctional Center in July 2014. Defendants are officials there. For the purposes of this Order, the Court accepts the factual allegations as true.

On July 7, 2014, plaintiff was housed in administrative segregation. Defendant Jarrett Davis served the inmates in administrative segregation their evening meal. Normally, the inmates are allowed fifteen minutes to eat their meals, but on that night, Davis began to collect the meals shortly after serving them. Plaintiff complained to Davis, and Davis threatened to place him on an alternative meal, which is meal loaf.

Plaintiff loudly demanded to see a supervisor. When Davis did not respond, plaintiff pressed his emergency call button several times. Shortly thereafter, plaintiff covered the window of his cell and again demanded to see a supervisor. Davis replied, "Don't hold your breath."

Plaintiff told Davis, "I'm taking my cellie hostage, now go get a [supervisor]!" Davis called defendant Michael Hubbart, who was another correctional officer, over to plaintiff's cell.

Upon hearing that, plaintiff placed his mattress in front of the food port. Davis and Hubbart then began spraying pepper spray into the cell. After being sprayed, plaintiff then physically struggled with defendants, rather than complying with their orders.

Defendant Carrie Sederstrom, a sergeant, arrived. Plaintiff was handcuffed, and his cellmate was removed from the cell. Soon afterwards, defendant Victoria Dill, a nurse, arrived and assessed plaintiff's injuries. Plaintiff was returned to his cell, where he rinsed some of the pepper spray off in the sink.

A few minutes later, defendant Timothy Pickett, a lieutenant, told plaintiff that a nurse would be coming by to draw plaintiff's blood. Plaintiff complained and demanded to see the Warden.

Plaintiff then barricaded himself in his cell. He says a "standoff" then ensued for "several hours." When plaintiff attempted to see what was happening outside of his cell, a team of correctional officers in riot gear breached the cell door. He says an unidentified officer took "cheap shots" at him and that another unidentified officer slammed his ankle on the floor several times. When his arms and legs were secured, a nurse drew his blood. The officers then removed the restraints and left the cell. Another nurse examined plaintiff after the confrontation.

At approximately midnight, Davis gave plaintiff a conduct violation for causing serious injury to another. Davis said that plaintiff bit him on his thumb during the confrontation.

On July 18, 2014, defendant Joanna Grubbs held a disciplinary hearing and found plaintiff guilty of the violation. Plaintiff says the investigation was incomplete and that the charge was false.

Plaintiff filed a grievance stating that Davis was "harassing" him. The response to the grievance stated that he would be transferred to the Southeast Correctional Center (SECC).

Plaintiff believes that the transfer was retaliatory, but he does not state who was responsible for it.

Plaintiff was placed in administrative segregation from July 10, 2014, until he was transferred to SECC on March 24, 2015.

Defendant Joey Runyon interviewed Davis and reviewed the photographs of his injuries. Plaintiff believes that Davis made inconsistent statements during the interview.

Runyon later filed a probable cause statement in the Circuit Court for St. Francois County. A jury trial was held, and plaintiff was found not guilty by a jury.

## Discussion

The alleged facts and the tone of the allegations demonstrate that this action is meant to harass those correctional officers plaintiff forced into a violent situation, as well as several officials who had nothing to do with the altercation. Plaintiff took his cell mate hostage and barricaded his cell against Davis and Hubbart. When they entered his cell he became physically violent with them, injuring Davis. When defendants told him his blood needed to be drawn, he barricaded his cell for several hours until a response team could breach the door. The other seventeen named defendants were only involved in the grievance process and did not contribute to plaintiff's injuries. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). For these reasons, the Court finds that this action is both frivolous and malicious, and it must be dismissed under 28 U.S.C. § 1915(e).

Additionally, defendants are entitled to qualified immunity. "Qualified immunity may protect government officials from liability under 42 U.S.C. § 1983, but not if their conduct

4

violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 527 (8th Cir. 2009) (en banc) (quotation omitted); *see Maness v. Dist. Court*, 495 F.3d 943, 944 (8th Cir. 2007) (analyzing qualified immunity on 28 U.S.C. § 1915(e)(2)(B) review). The tests for whether an officer is entitled to qualified immunity are: (1) whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This Court may consider these in either order. *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010).

It is "well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause." *Foulk v. Charrier,* 262 F.3d 687, 702 (8th Cir.2001). "The 'core judicial inquiry, [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Defendants Davis and Hubbart did not violate a clearly established federal right. Prisoners do not have a right to be free from the use of pepper spray or physical force after they have taken their cell mate hostage and instigated physical violence against the correctional officers. Moreover, plaintiff's allegations do not show that Davis or Hubbard's use of force was more than "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." As a result, defendants are shielded by qualified immunity.

Because this case is malicious and defendants are entitled to qualified immunity, the Court dismisses this action with prejudice. Moreover, an appeal from this action would not be taken in good faith.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff must pay an initial filing fee of $2.00 within fourteen (14) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.[1]

**IT IS FURTHER ORDERED** that this action is **DISMISSED** with prejudice.

An Order of Dismissal will be filed separately.

Dated this 5th day of August, 2016.

\s\ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[1] Prisoners must pay the full amount of the $350 filing fee. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner will deduct the payments and forward them to the Court each time the amount in the account exceeds $10. 28 U.S.C. § 1915(b)(2).